UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cr-00218-MOC-DSC

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM OF DECISION AND ORDER** |
| | ) | |
| **QUENTIN JAVON FEREBEE,** | ) | |
| Defendant. | ) | |

Defendant is charged with possession of a firearm on March 23, 2017, by a convicted felon, in violation of 18, United States Code, Section 922(g). In moving to suppress, defendant contends that state law enforcement officers violated his Fourth Amendment protections when they conducted a search of his backpack after he was arrested, handcuffed, and removed from the room where the backpack was located. In response, the government contends that defendant lacks standing to challenge the search as he disclaimed ownership of the bag at the time of arrest and that even if he has standing, the search was lawful as one incident to arrest. Having conducted an evidentiary hearing, reviewed the pleadings submitted by the parties, and considered the exhibits, the Motion to Suppress will be denied for the reasons that follow.

I.

On March 23, 2017, a number of state law enforcement officers conducted a warrantless search of a state probationer's home. Among the officers were Officer J. D. Bensavage, a North Carolina Probation and Parole Officer, and Detective T. E. Grosse, Charlotte Mecklenburg Police Department, who was also a member of the local ATF Task Force. Upon entering the home of the

1

state probationer, officers smelled the odor of marijuana emanating from the living room, immediately adjacent to the home's front door. Officers observed defendant in possession of a marijuana blunt.

Three officers included in their police reports that they saw defendant holding a black backpack.[1] Officer Bensavage stated in his report, as follows:

> Mr. Ferebee also picked up a black backpack with his left hand as he stood up and held it out to his side as Officer B. Sinnott search his person due to his possession of marijuana. Mr. Ferebee appeared nervous and this Officer asked him if he had any weapons in his bag. He replied this isn't even my bag.

Def. Exh. 1 (#13-1 at 1). At the hearing, Officer Bensavage testified that he saw defendant pick up the bag from the floor, stand, hold it out towards the officers, and disclaim ownership of the bag. He also testified that before defendant picked up the bag, it was located near defendant who was sitting on a loveseat or small sofa.

A body-cam video was also played at the hearing. While there was no audio, the video briefly shows defendant being led out of the room before the backpack was searched. The evidence presented indicated that the bag was searched in the living room after defendant had been led out the adjacent front door in handcuffs, but that the front door remained open during the search.

The warrantless search of the backpack revealed a mason jar of marijuana (approximately 11 grams), digital scales, a marijuana grinder, a pistol, and defendant's South Carolina issued identification. Testimony at the hearing indicated that a second firearm was found under the cushion where defendant was sitting. The charge in this case stems from the pistol in the backpack only. Subsequent to the search of the backpack, defendant claimed ownership of the backpack.

---

[1] Def. Exhs. 2 (#15-1), 3 (#15-2), & 4 (#15-3).

II.

If an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana. United States v. Humphries, 372 F.3d 653, 659 (4th Cir. 2004). Armed with probable cause, the officer may both arrest and search the arrestee. United States v. Day, 591 F.3d 679, 696 (4th Cir. 2010). During a search incident to arrest, law enforcement officers are permitted to search the area within the arrestee's "immediate control," or "the area from within which he might gain possession of a weapon or destructible evidence." Chimel v. California, 395 U.S. 752, 763 (1969).

Prior to reaching the Fourth Amendment issue, it is defendant's burden to establish that he has standing to challenge the search. Rakas v. Illinois, 439 U.S. 128, 134 (1978). A defendant has standing where he shows that he had a legitimate expectation of privacy in the particular area or item searched. United States v. Davis, 430 F.3d 345, 359–60 (6th Cir. 2005); United States v. Avent, 162 F.3d 1156 (4th Cir. 1998). In considering whether defendant has demonstrated a legitimate expectation of privacy, courts consider: (1) whether the defendant has manifested a subjective expectation of privacy in the particular area searched; and (2) whether society is prepared to recognize this expectation of privacy as objectively reasonable. California v. Greenwood, 486 U.S. 35, 39 (1988).

It is well established that a person has a reasonable expectation of privacy in backpacks or bags they may be carrying or are within their immediate control, Bond v. United States, 529 U.S. 334, 337 (2000), as such expectation of privacy is well within those society is prepared to recognize. Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). The issue here concerns the first Greenwood factor, which is whether defendant "manifested a subjective

expectation of privacy" when he stated that it was not his bag and held it out towards the approaching officers. At oral arguments, defendant first called into question the veracity of Officer Bensavage's testimony concerning defendant's disclaimer. Defendant argued that no other officer included defendant's alleged disclaimer in their reports[2] and that counsel would have liked to question other officers, especially Officer Sinnott.[3] The Court found Officer Bensavage's testimony to be most credible based on his demeanor during his testimony. Not only was Officer Bensavage's testimony believable, it was consistent with his statement (#13-1) and the statements of other officers. Indeed, when counsel for the government attempted to elicit testimony from Officer Bensavage consistent with its theory that defendants placed in handcuffs can break out of those restraints, he testified that he had no knowledge of such occurrences. The Court finds that Officer Bensavage testified truthfully and did not embellish his testimony even when given a clear shot at bolstering the search incident to arrest. The credible evidence before this Court is simply that defendant disclaimed ownership of the backpack while extending the backpack in the direction of the approaching officers. Based on the credible testimony presented by Officer Bensavage, the fact that other officers did not include the disclaimer in their reports does not give this court reason to discredit either his report or his sworn testimony.

Having determined that defendant disclaimed ownership of the backpack and extended the backpack to the approaching officers at the time of arrest, the Court must now consider whether such words and actions were sufficient to amount to abandonment of defendant's privacy interest in the bag. While a defendant can certainly have a legitimate expectation of privacy in a backpack,

---

[2] See *ibid.*
[3] Inasmuch as the defendant carries the burden of establishing standing, the Court pointed out to defense counsel that the defense could subpoena witnesses, which the Court would enforce. Counsel did not then move to recess the hearing so that he could subpoena witnesses.

those legitimate expectations can be abandoned. Abel v. United States, 362 U.S. 217, 241 (1960). Determining whether abandonment has occurred is a fact-intensive inquiry and can be inferred from words, acts, and other objective facts. United States v. Colbert, 474 F.2d 174, 176 (5th Cir.1973) (*en banc*). To make this determination, a court must consider the totality of the circumstances surrounding the search. Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); Rakas, 439 U.S. at 150-52 (Powell, J., concurring). Indeed, a defendant can abandon his or her expectation of privacy by disclaiming interest and walking away from a briefcase, Colbert, supra, repeatedly disclaiming ownership of a suitcase, United States v. Canady, 615 F.2d 694 (5th Cir.), cert. denied, 449 U.S. 862 (1980), or throwing down a bag and running away from an officer. United States v. Bush, 623 F.2d 388 (5th Cir. 1980).

At the time he was arrested, defendant clearly disclaimed ownership of the bag. As other courts have held, "a disclaimer of ownership, while indeed strong indication that a defendant does not expect the article to be free from government intrusion, is not necessarily the hallmark for deciding the substance of a fourth amendment claim." United States v. Hawkins, 681 F.2d 1343, 1346 (11th Cir. 1982). Indeed, this Court must not end its consideration of standing with defendant's words alone, but must consider a totality of the circumstances that led officers to search the bag. Rawlings, supra. In addition to defendant's words, there was evidence presented as to defendant's actions. At the same time he disclaimed ownership, he picked up the bag and extended it towards the officers. Such actions clearly reinforce the disclaimer, to the effect, this is not my bag, take it.

Here, defendant's words were an affirmative disavowal of ownership; when those words are coupled with act of holding the backpack out toward approaching officers, a reasonable inference arises that defendant has unequivocally denied ownership of the bag. While defendant

essentially argues that officers should have made further inquiry before searching the backpack to make sure it was not his, that would amount to Monday-morning quarterbacking. Instead, the Court finds that its review must be based on the totality of the circumstances that actually occurred. Rawlings, supra. While the defendant in United States v. Washington, 677 F.2d 394 (4th Cir. 1982) denied ownership three times and ultimately stated "'It's not my bag, I don't care what you do,'" id. at 396, this Court cannot discern from the Washington decision that officers are required to secure multiple denials by a defendant or make additional inquiry. Indeed, in support of its finding, the Fourth Circuit cited Lurie v. Oberhauser, 431 F.2d 330 (9th Cir. 1970), wherein a defendant's one-time denial of ownership of a piece of luggage was held sufficient to justify the search even though a claim ticket for that piece of luggage was attached to one of the defendant's airline tickets. Id. at 396.

Finally, the fact that defendant claimed ownership of the backpack *after* the search is of no moment. Mere ownership or possession of an item seized is insufficient in itself to establish a right to a legitimate expectation of privacy in the particular area searched. United States v. Manbeck, 744 F.2d 360, 374 (4th Cir. 1984). Instead, the totality of the circumstances must be considered at the time the decision was made to search the backpack, not after. As the Fourth Circuit has long held, "disclaimer is analogous to abandonment …." United States v. Williams, 538 F.2d 549, 551 (4th Cir. 1976) (disclaiming ownership of a briefcase immediately prior to search). The Fourth Amendment protects people, not property, against "unreasonable searches and seizures," United States v. Hylton, 349 F.3d 781, 785 (4th Cir. 2003), and a person who denies ownership of certain property loses standing to challenge the property's search or seizure. United States v. Leshuk, 65 F.3d 1105, 1111 (4th Cir. 1995).

The Court concludes that defendant, having abandoned the backpack at the time of the search, lacks standing to challenge the search of the backpack.

III.

As defendant lacks standing, the Court would typically not reach the Fourth Amendment challenge to the search. To provide a more complete record for appellate review, the Court has considered the constitutional challenge to the search only in the event the Fourth Circuit determines that defendant has standing.

Defendant argues that the search of the backpack was unlawful under the reasoning of the Supreme Court in Chimel as it is now under Arizona v. Gant, 556 U.S. 332 (2009). In Gant, the defendant was arrested, handcuffed, and locked in the back of a patrol car before his vehicle was searched. There the Court held that police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense for which the person was arrested. Id. at 343.

The evidence presented here indicates that within minutes of defendant being arrested, handcuffed, and removed from the living room, Detective Grosse searched the backpack. Defendant contends that such search was improper as he was no longer capable of reaching, lunging, or otherwise taking control of the backpack inasmuch as he was handcuffed and outside the home, with a number of officers standing between him and the backpack.

It is not readily apparent that the Fourth Amendment clarifications provided by the Court in Gant have any application to a search incident to an arrest in the non-automobile context. Indeed, the Court in Gant clearly recognized the dichotomy between an automobile search for officer safety when a suspect is not fully secured and the search of that same automobile incident

7

to arrest if the officer believes that vehicle contains evidence of the offense of arrest. Id. In this case, defendant had already been placed under arrest for possession of marijuana, making the search of the backpack incident to arrest.

Defendant contends that once the searching officer gained control of the backpack and defendant was removed from the home in handcuffs, the exigency of defendant regaining control over the bag no longer existed and he should have obtained a warrant. That precise argument has, however, already been made to and rejected by the Fourth Circuit. United States v. Litman, 739 F.2d 137, 139 (4th Cir. 1984) (citing New York v. Belton, 453 U.S. 454, 461 n. 5 (1981)). In United States v. Shakir, 616 F.3d 315 (3d Cir. 2010), the Court of Appeals for the Third Circuit held that "reading Gant to prohibit a search incident to arrest whenever an arrestee is handcuffed would expose police to an unreasonable risk of harm." Id. at 321. The Shakir court reasoned that, "[a]lbeit difficult, it is by no means impossible for a handcuffed person to obtain and use a weapon concealed on his person or within lunge reach, and . . . like any mechanical device, handcuffs can and do fail on occasion." Id. at 320 (citation omitted). Even if the Court were to assume, as defendant suggests, that having him in handcuffs outside the room where the backpack is being searched is a failsafe, the Court does not see the equivalency of the Fourth Amendment mischief Gant was fashioned to curtail, to wit, warrantless searches of automobiles where the exigency does not exist, and the search of a person's bag immediately after an arrest and in the immediate area where that arrest occurred. To extend Gant as defendant suggests would not only erase the bright lines formed in cases that have followed Chimel, it would clearly be in contravention of Litman and Belton. There simply is no Fourth Amendment mischief to be curtailed in the search of an arrestee's person or items that were within their immediate control at the time of arrest, so long as that search occurs within close temporal and spatial proximity to the place of arrest. The fact that

defendant was moved to a safer location nearby seems to be precisely what society demands to protect both the defendant and the officers. While the Court fully appreciates that the officer safety exigency particular to encounters with suspects in or near automobiles diminishes as the suspect is removed from the object that creates the exigency as addressed in Gant, it would be folly to find that the ability to search an *arrestee's* shoulder bag or backpack *incident to arrest* somehow fades as the arrestee moves away from the area of arrest. Here, the bag was searched where it was found and immediately following defendant's arrest. Search incident to a lawful custodial arrest is an exception to the warrant requirement of the Fourth Amendment:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

United States v. Robinson, 414 U.S. 218, 235 (1973).

Finally, even if it is later determined that defendant has standing and that Gant limits searches incident to arrest beyond the automotive exigency, suppression of the fruits of that search would not be appropriate as the evidence would otherwise be admissible under the "inevitable discovery doctrine." This exception to the exclusionary rule provides that "when … the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." Nix v. Williams, 467 U.S. 431, 448 (1984). Arresting officers frequently if not routinely perform inventory searches when they detain suspects. United States v. Hairston, 409 Fed. Appx. 668, 670 (4th Cir. Jan. 27, 2011) (citing Illinois v. Lafayette, 462 U.S. 640, 648 (1983) (holding admissible evidence recovered during an inventory search of a shoulder bag possessed by a lawfully arrested person)). Inventory searches "serve to protect an owner's property while it is in the custody of the

9

police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." Colorado v. Bertine, 479 U.S. 367, 372 (1987). If the backpack had not been searched incident to arrest, an inventory search of the backpack would most certainly have been conducted, leading to the discovery of the firearm. Because the items seized would have been inevitably discovered, the Court would not exclude their introduction even if it were determined that Gant applied.

IV.

Having carefully considered defendant's Motion to Suppress, the Court will deny the Motion to Suppress as defendant lacks standing to raise a Fourth Amendment challenge. In the alternative, the Court finds that in the event it is determined that defendant has standing, Gant does not apply to this search and the search of the defendant's backpack was a lawful search incident to his arrest as it was made in close temporal proximity to the place and time of his arrest. Even if Gant applies and resulted in a finding that the search exceeded the bounds of a search incident to arrest, the Court finds the evidence would otherwise be admissible under the inevitable discovery doctrine.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Suppress (#13) is **DENIED**.

Signed: November 22, 2017



Max O. Cogburn Jr
United States District Judge